JAMES R. KAISER, Inc., v. FULLER EXPRESS CO.

(Supreme Court, Appellate Term, First Department. January 7, 1915.)

1. CARRIERS (§ 105*)—DELAY IN DELIVERY—MEASURE OF DAMAGES.

Where broken sets of handkerchiefs were consigned by a shipper to its factory to be made into completed sets for the holiday trade, the measure of damages for delay in shipment, whereby the handkerchiefs had to be replaced for such trade, was the cost of replacing.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 451–458; Dec. Dig. § 105.*]

2. WITNESSES (§ 294*)—PRIVILEGE—TRADE SECRETS.

In an action for loss of a shipment of broken sets of handkerchiefs, consigned by a shipper to its factory to be made into completed sets for the holiday trade, whereby the handkerchiefs had to be replaced, questions on cross-examination of witnesses, to bring out the cost of production of the replaced goods, cannot be evaded by the privilege of "trade secrets."

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 1015–1017; Dec. Dig. § 294.*]

Appeal from Municipal Court, Borough of Manhattan, Fourth District.

Action by James R. Kaiser, Incorporated, against the Fuller Express Company. From a judgment for plaintiff, defendant appeals. Reversed, and new trial ordered.

Argued November term, 1914, before LEHMAN, DELANY, and WHITAKER, JJ.

Powers & Kaplan, of New York City (Maurice A. Pompan, of New York City, of counsel), for appellant.

A. M. Becker, of New York City (Robert E. Palmer, of New York City, of counsel), for respondent.

DELANY, J. The action was brought by the plaintiff for damages alleged to have been sustained by the plaintiff by reason of the failure of the defendant, a common carrier, to deliver certain merchandise on time. The answer consisted of a general denial and a defense to the effect that, if the merchandise in question was delivered by the plaintiff to the defendant for carriage, it was so delivered under a special contract in writing, which provided that, in the event that the goods were damaged or lost, the defendant's liability should not be greater than $50, unless the true value at the time of shipment was stated by the shipper, and that no value had been stated to the defendant by the plaintiff, which in effect concealed the true value, if over $50, in order to secure the carriage at a cheaper rate than plaintiff otherwise would have received, had the real value been stated to the defendant, and that by reason of such facts the defendant was not liable.

The merchandise shipped consisted of $59^2/_{12}$ dozen men's handkerchiefs and 450 dozen children's handkerchiefs. The plaintiff made a specialty of making sets consisting of seven handkerchiefs, each hand-

kerchief of the set having stamped upon it a picture of a cat or dog, and an inscription showing one of the days of the week. These were known to the trade as "Cat and Dog" handkerchiefs. Part of the shipment consisted of 450 dozen of these "Cat and Dog" handkerchiefs, which had already been stamped with two or three appropriate days of the week, and these incomplete sets were being sent to the plaintiff's factory to be laundried and boxed and to be matched with handkerchiefs representing the other days of the week.

At the trial it developed that on November 1, 1912, the plaintiff delivered to the defendant at New York City a case containing the men's and the children's handkerchiefs for carriage to plaintiff's factory at Passaic, N. J. The case was not delivered to the factory until December 21st, when the plaintiff refused to accept it, claiming that the goods were intended for the 1912 holiday trade, that they were seasonable goods, and that it had been compelled to replace the merchandise. Finally the shipment on the plaintiff's order was sent to the Merchants' Claim Association and sold by it for $40.

At the time that the plaintiff shipped the mechandise in question, the driver of the defendant's express wagon had signed a receipt tendered to him by the plaintiff. That form of receipt had printed upon the back thereof the following:

"(3)  *  *  *  The amount of any loss or damage for which any carrier becomes liable shall be computed at the value of the property at the place and time of shipment under this bill of lading, unless a lower value has been agreed upon or is tendered by the classification upon which the rate is based, in either of which events such lower value shall be the maximum price to govern such computation.  *  *  *

"(8) Any alteration, addition, or erasure of this bill of lading, which shall be made without the special notation hereon of the agent of the carrier issuing this bill of lading, shall be void."

The said receipt was offered in evidence by the plaintiff, and received as Plaintiff's Exhibit No. 3. There is no testimony in the case to establish that the defendant's driver tendered to the plaintiff any bill of lading furnished by the defendant, limiting the amount of liability to $50 unless a greater value was stated. On this appeal the defendant accepts the plaintiff's receipt (Plaintiff's Exhibit No. 3) signed by the defendant's driver as the written contract of shipment.

During the trial, the trial court received evidence of a prior parol agreement concerning the shipment of the plaintiff's goods, by which parol evidence the plaintiff sought to establish that the defendant had agreed to make immediate deliveries of the plaintiff's goods, and that the plaintiff had brought to the notice of the defendant that its goods were seasonable, and unless delivered immediately would be valueless. The trial court refused to permit the defendant to examine the plaintiff's witness as to value upon the cost of the labor and material in the goods lost, and on this appeal the defendant contends that it was not afforded the right to properly cross-examine, and that it was prejudiced by the admission of the testimony concerning the prior parol agreement. The complaint alleged that by reason of the failure of the defendant to deliver the goods in a seasonable time the *value of the goods was greatly depreciated*.

The damages asked for in the complaint were for a depreciation in the value of the children's handkerchiefs, which depreciation was figured at 50 cents per dozen. The bill of particulars also estimated the depreciation at 50 cents per dozen, less the $40 obtained on the sale of the goods by the Merchants' Claim Association; but on the trial the claim of depreciation was seemingly abandoned, and an attempt was made to prove the cost of the goods alleged to have been misdelivered. The plaintiff's witness Bauer, testifying as to the value, etc., said that the *depreciation* was *40 cents a dozen* figured on the cost value, and that the *cost* of the goods was *40 cents a dozen;* that he was suing for the *value* of the goods; that he had nothing to do with estimating the damages, and did not know the value the depreciation was based on in the bill of particulars. Later he said that the depreciation was based on the difference in the cost at *50 cents per dozen* and what had been finally realized for them at the sale. On redirect examination, he said that he did not mean 40 cents was the cost, that *to get the cost he would have to refer to his records at the factory,* and that 50 cents a dozen would be a *fair value.* On cross-examination he said that his estimate of the cost at 50 cents a dozen was on the completed article, and included *ironing, pressing, and everything else* to be done. Later he said that his estimate of 50 cents a dozen as the cost did not include pressing, ironing, boxing, etc. He was then asked:

"Q. Didn't you give us the estimate of the completed article? A. The value of this article—I couldn't state the value of the completed article; it is a trade secret.

"The Court: That you may state: What is the value of the completed article, the cost price—what is it? A. About 65 cents a dozen."

The witness, in explaining the cost of the tearing in preparing the handkerchiefs, was asked whether it was by the dozen or by the yard, and replied that he could not answer that, as it was a trade secret. When he was asked if it cost 40 cents a dozen to manufacture the handkerchiefs, the trial judge sustained the objection of plaintiff's counsel. When asked what the cost of the handkerchiefs without the stamping was, he was sustained in his refusal to answer the question on the ground that it was a trade secret. The defendant's attorney took exceptions to the trial judge's rulings.

It will be seen from the foregoing, and from an inspection of the record below, which is very much complicated, that the witness Bauer testified, first, to a cost price at 40 cents, then at 50 cents, then at 65 cents per dozen, and that to get the cost he would have to refer to the factory records. Throughout his testimony, he seemingly confused the terms "depreciation," "cost price," "value," "loss," etc., as meaning one and the same thing, and did not know on what value he based his claim of depreciation.

[1, 2] The plaintiff affects to sue for the value of the depreciation of the lost goods, which he had refused to receive when offered for delivery too late. This is not the measure of damage. He claimed that it became necessary for him to replace the goods, and that he did replace them, and we may assume that the cost of replacing the

goods was the measure of the damage which he sustained. To the attempt'to bring out on cross-examination the cost of production of the replaced goods, the plaintiff objected on the ground that the cost of production was a trade secret, and under exceptions these objections were sustained. This was, we think, error: First, in allowing improper evidence as to the damage; and, secondly, in denying to the defendant a proper cross-examination, which might have shown, among other things, the loss sustained. The privilege of what is called "trade secret" is not available under these circumstances.

Judgment reversed, and new trial ordered, with costs to the appellant to abide the event. All concur.